• Quinn, J. P.
(dissenting). The background of events and history of litigation between the parties to this suit, though largely irrelevant to the resolution of the issues presented, are fairly stated in the majority opinion.
The grant of the term for years, by the written lease here in question, was the quid pro quo, furnished by the landlord, in exchange for tenant’s surrender of his valuable right of review of the order of decontrol (beneficial to landlord) pending before the rent commission. The compromise by which the parties thus settled their differences was thereupon concluded as a fully executed oral contract. This lease as the grant of an interest in real property for a term of years was in the nature of a novation, *134 wholly separate and apart from the executed oral contract of settlement for which it furnished landlord’s part of the consideration. This lease makes no mention of the contract of settlement, nor of any of the negotiations leading up to its execution, and is in no way made subject to or conditional upon the concluded compromise or its negotiation.
Paragraph 30 of the lease clearly, simply and unequivocally provides for a possible extension of the stipulated term, on a month to month basis, and the conditions for its termination. To read into paragraph 30 a revival, or perpetuation, or incorporation by implied reference, of the executed oral agreement of settlement and perhaps the unrecorded hopes of the landlord thereunder, is to let imagination run riot in transmuting shadow into substance and to attempt to torture nonexistent meaning from the interstices of plain words.
Taking this written lease in its aspects as a contract merely (apart from its essential character as the conveyance of an interest in real property), to even consider the oral negotiations which led up to the executed oral contract of settlement, for which this written lease was given as consideration, and to seek thereby to construe this lease as some sort of a reverse anomaly called “ an agreement to vacate ”, is to fly in the face of such elementary principles as the inadmissibility of paroi evidence to vary, enlarge or diminish the unambiguous terms of an executed writing, as well as the presumption of merger of all prior oral negotiations into a final writing.
The Bent Stabilization Law (Administrative Code of City of New York, § YY 51-6.0, subd. c, par. [4]) mandates the offer by landlords of a two- or three-year renewal of the term of every unexpired lease (affecting certain specified New York City housing accommodations) in existence on the effective date of the statute (Fifty Cent. Park West v. Bastien, 64 Misc 2d 911, affg. 60 Misc 2d 195). The fact that an existing lease, by its own provisions for renewal or extension, offers the tenant a lesser renewal term, obviously does not satisfy the mandate of the statute or relieve the landlord of the duty of compliance. Section 10 of the Bent Stabilization Code approved by the Housing and Development Administration pursuant to the powers granted by the Bent Stabilization Law (Local Laws, 1969, No. 16 of City of New York) makes this explicit when it provides in part that: tl The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with the BSL or this Code, in which event such provisions shall be suspended ”.
*135 If there were no paragraph 30 in the instant lease, it is beyond dispute that tenant would be entitled to a two- or three-year renewal under the mandate of the Rent Stabilization Law and Code. No doubt the Rent Stabilization Law and Code and the legislatively-declared emergency which necessitated it, were not within the contemplation of the parties at the time this lease was executed. But the suggestion that paragraph 30 had created a unique tenancy not within the contemplation of the later-enacted Rent Stabilization Law and Code is a gratuitous assumption rendered wholly untenable by the quoted excerpt suspending all lease provisions inconsistent with the local law and code. The code can only be speaking prospectively when it refers to the suspension of provisions in affected leases which are found to collide with such enactments as the mandate of the statute protecting tenants, at the expiration of their leases, with the option of a two- or three-year renewal. The lease here was in existence on May 12, 1969, the effective date of the statute, and it provided in paragraph 30, at its expiration on February 29, 1972, for an extension of the term, on a month-to-month basis only. This runs afoul of the Rent Stabilization Law and section 10 of the code as an inconsistent provision, so that paragraph 30 is necessarily suspended. With paragraph 30 out of the way, it becomes abundantly clear that landlord’s failure to offer tenant a renewal lease before February 29,1972, in accordance with section 60 of the Rent Stabilization Code, prevents it from maintaining the holdover summary proceeding here under review (Rent Stabilization Code, § 50). The final judgment in favor of landlord should be reversed with $30 costs and the petition dismissed.
Lupiano and Fine, JJ„, concur in Per Curiam opinion; Quinn, J. P., dissents in memorandum.
Final judgment affirmed, etc.